UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSE L. HERNANDEZ,

                                    Plaintiff,

        -v-                                         5:16-CV-1030


L. LLUKACI, Sergeant, Special Investigator, ID #
0582, Syracuse Police Department; E. BRAUN,
Special Investigator, ID #001, Syracuse Police
Department; J. CINQUE, Special Investigator, ID
# 047, Syracuse Police Department; and SCOTT
HENDERSON, Special Investigator, ID # 0244,
Syracuse Police Department,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

JOSE L. HERNANDEZ
Plaintiff pro se
17-B-2751
Attica Correctional Facility
Box 149
639 Exchange Street
Attica, NY 14011

CITY OF SYRACUSE CORPORATION          TODD M. LONG, ESQ.
    COUNSEL                           ERICA T. CLARKE, ESQ.
Attorneys for Defendants              Ass'ts Corporation Counsel
233 East Washington Street
Room 300 City Hall
Syracuse, NY 13202


DAVID N. HURD
United States District Judge

# MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Jose L. Hernandez ("Hernandez" or "plaintiff"), who is currently incarcerated at Attica Correctional Facility, has filed this pro se civil rights action against four City of Syracuse Police Department ("SPD") officers including L. Llukaci, Sergeant, Special Investigator, ID # 0582, SPD ("Sgt. Llukaci"); E. Braun, Special Investigator, ID #001, SPD ("Det. Braun"); J. Cinque, Special Investigator, ID # 047, SPD ("Off. Cinque"); and Scott Henderson, Special Investigator, ID # 0244, SPD ("Det. Henderson") (collectively "defendants" or "defendant officers"). The operative complaint alleges that the defendant officers' conduct in connection with Hernandez's April 27, 2016 arrest and subsequent prosecution, violated his rights under the United States Constitution and New York law. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and seeks compensatory damages along with dismissal of all criminal proceedings against him.

The parties have engaged in discovery and defendants now collectively move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 and for judgment on the pleadings pursuant to Rule 12(c) dismissing plaintiff's Complaint in its entirety. Plaintiff opposed and defendants replied. Plaintiff later filed an untimely additional "response," which in light of his pro se status will be considered. The motion was considered on the basis of the submissions and without oral argument.

## II. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Statement of Material Facts Not In Dispute ("SMF") defendants have submitted in connection with their summary judgment motion. Because Hernandez has controverted none of the facts contained in

defendants' statement, they are "deemed admitted" to the extent the evidentiary record supports them. Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003).[1]

## A. Initial Apprehension of Hernandez

On April 27, 2016, officers with the SPD in conjunction with the Special Investigations Division ("SID") Narcotics section of SPD, were involved in a drug investigation at a parking lot at 220 South Geddes Street, Syracuse, New York. SMF ¶ 1. The Geddes Street parking lot had been identified by SPD as a common meeting location for the sale, purchase, and possession of illegal narcotics. ¶ 2. This operational detail was to interdict street level narcotics transactions and/or possession at the Geddes Street parking lot (the "Operation"). ¶ 3. During all relevant times, Det. Henderson was a plain clothes SPD detective assigned to monitor for illegal narcotics activity at the Geddes Street parking lot. ¶ 4.

At 1:00 p.m. on the date of the incident, Det. Henderson observed a black Dodge Caliber driven by a white female, later identified as Jacqueline Hess ("Hess"). The Caliber parked in an outer area of the Geddes Street parking lot, roughly 200 yards away. ¶ 5. Ten minutes later, an unidentified Hispanic male, later identified as plaintiff, approached Hess's vehicle on foot. ¶ 6. Plaintiff made what Det. Henderson believed to be a hand-to-hand drug transaction with the female through the driver's side window where she was seated. ¶ 7. Det. Henderson had a clear view of plaintiff, who was wearing a gray hooded sweatshirt, as

---

[1] While plaintiff, without permission, submitted a late "Statement of Material Fact," this submission does not alter the uncontroverted material facts in defendants' SMF. Hernandez's submission does not respond to defendants' SMF as required and merely states the following two facts: (1) that he was taken to the police station by defendants, and (2) that he was subdued by Officer Cinque and Det. Braun who performed a forcible cavity search to get drugs from him. This second "fact" is not supported by reference to anything in the record.

he approached Hess's vehicle.  ¶ 8.  Hernandez then entered a red Chevrolet Traverse which was later identified to have been operated by Lydell Killings ("Killings' vehicle").  ¶ 9.

Det. Henderson then advised nearby officers via radio transmission about the drug transaction he witnessed.  ¶ 10.  He transmitted the physical description of the then-unidentified Hispanic male and advised units to pursue Killings' vehicle.  ¶ 11.  Off. Cinque, who was assigned to SID that day, assisted after receiving Det. Henderson's radio transmission.  ¶ 12.  Off. Cinque was in an unmarked SPD vehicle with Det. Braun.  ¶ 13. Det. Henderson directed Off. Cinque and Det. Braun to stop Killings' vehicle.  ¶ 14.

Killings' vehicle proceeded to drive to Burger King at 955 West Genesee Street, Syracuse.  Off. Cinque and Det. Braun followed the vehicle.  After Killings' vehicle arrived at Burger King, Off. Cinque and Det. Braun, along with several other SPD units, conducted a traffic stop of Killings' vehicle in the Burger King parking lot.  ¶16.

Off. Cinque and Det. Braun approached Killings' vehicle, with badges displayed and wearing ballistic vests marked "POLICE."  ¶ 17.  Off. Cinque approached plaintiff because he matched the physical description provided by Det. Henderson of the Hispanic male that engaged in the drug transaction in the Geddes Street parking lot.  ¶ 18.  Off. Cinque asked plaintiff to exit Killings' vehicle so he could be interviewed.  ¶ 19.  Plaintiff complied and while outside of the vehicle he was patted down and placed in handcuffs for officer safety.  ¶ 20. Nothing was discovered as a result of the pat down.

Hernandez was at all times cooperative.  ¶ 20.  He was escorted away from the vehicle so officers could speak to him separately from the two other people the vehicle.  ¶ 22. After being asked if he possessed any drugs, plaintiff ultimately admitted that he had secreted crack cocaine ("crack") between his butt cheeks, or as plaintiff described it:

"cheeked it." ¶ 23. By using the phrase "cheeked it," Off. Cinque believed Hernandez to mean he had placed the crack in the area of his buttocks beneath his clothes. Plaintiff volunteered to retrieve the drugs manually for police, which were easily accessible to him toward the back of his pants. ¶ 25.

Meanwhile, Det. Henderson had followed Hess's vehicle after it left the Geddes Street parking lot, and soon thereafter performed a traffic stop of the vehicle. ¶ 27. Hess identified herself and admitted to having purchased $50 worth of crack from the individual who would later be identified as Hernandez. ¶ 28. She surrendered her purse and the drugs inside to Det. Henderson. ¶ 29. The crack Hess purchased from plaintiff was identified and tested positive as crack cocaine. ¶ 30.

### B. Hess's Show-up Identification of Hernandez

Hess was then transported to Hernandez's location in the Burger King parking lot at approximately 1:39 p.m. ¶ 31. She positively identified Hernandez as the individual who sold her the crack she had surrendered to Det. Henderson. ¶ 32. In her signed statement, she indicated that she purchased the crack from a person she knew to have the nickname "City." ¶ 33. Hess also indicated in her signed statement that when she positively identified plaintiff during the show-up identification in the Burger King parking lot, she recognized him as the same individual she knew as "City." ¶ 34. Hernandez acknowledges that "City" is his nickname. ¶ 35.

### C. Hernandez Volunteers Crack to Defendant Officers

Sgt. Llukaci, who monitored and oversaw the activities of Det. Braun and Off. Cinque during this Operation, overheard Hernandez admit to investigating officers in the Burger King

parking lot that he had secreted the crack cocaine between his buttocks, he was capable of obtaining it, and was willing to retrieve it on his own. ¶ 37.

Sgt. Llukaci instructed Det. Braun and Off. Cinque to transport Hernandez to the SPD's Public Safety Building ("PSB") to allow him to remove the drugs and turn them over to police. ¶ 38. Hernandez indicated he could remove the crack without assistance because it was not within his rectum, but was actually easily accessible for retrieval toward the back of his pants. The crack was not retrieved at the Burger King parking lot as Sgt. Llukaci preferred Hernandez retrieve the crack in a private and secure environment at the PSB. ¶ 39.

Hernandez was then transported by Off. Cinque and Det. Braun to the PSB. ¶ 36. The officers brought plaintiff to a secure interview room at the PSB. The room was private and a controlled setting, it had no windows, only one door into the room, and was well lit. ¶ 40. Hernandez, Off. Cinque, and Det. Braun were the only individuals in the room at the time of the retrieval. ¶ 41.

In the interview room, maintaining he could retrieve the crack himself, Hernandez —with no assistance or interference—voluntarily retrieved the drugs from the back of his pants and/or buttocks area with his hands and placed the drugs in an evidence bag. ¶ 42. He was at no point disrobed. ¶ 43. At no point did either Off. Cinque or Det. Braun themselves retrieve the crack cocaine. ¶ 44. Nor did Off. Cinque or Det. Braun perform any form of a strip search or any anal cavity search of plaintiff. ¶ 45. Off. Cinque and Det. Braun never touched Hernandez's naked buttocks or anus in the interview room. ¶ 46. Plaintiff removed the crack cocaine from his own person, by himself, without police assistance or

directives. ¶ 47. The drugs handed over by Hernandez tested positive for crack cocaine, with an aggregate weight equaling no less than 35 doses. ¶ 48.

### D. **Hernandez's Meeting with Det. Henderson**

After plaintiff retrieved the drugs and they were placed into evidence, he requested to speak with the lead detective responsible for the investigation, who was Det. Henderson. ¶ 49. Hernandez, in an attempt to have the potential drug charges dropped against him, wanted to negotiate the drop of an illegal handgun to SPD. ¶ 50. However, Det. Henderson had no interest in plaintiff's proposed arrangement. ¶ 51. Hernandez was eventually escorted from the PSB and lodged at the Onondaga County Justice Center.

### E. **Indictment and Pre-trial Proceedings**

Hernandez was charged with Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39), Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16), Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y. Penal Law § 220.09), and Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03). ¶ 64. He was subsequently indicted by an Onondaga County grand jury on all of the above-mentioned charges along with an additional count of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16). ¶ 65.

A suppression hearing in the criminal case was later held in Onondaga County Court before Judge Robert L. Bauer ("Judge Bauer") prior to trial. ¶ 66. At the suppression hearing, Det. Henderson, Det. Braun, and another detective who also part of the Operation, testified on behalf of the State of New York (the "People"). Det. Henderson's police report was entered into evidence. ¶ 68.

Hernandez's attorney was provided an opportunity to cross-examine each witness. ¶ 69. Hernandez admits he had the opportunity to testify on his own behalf in support of suppression at the hearing, but waived it upon the advice of counsel. ¶ 70. Judge Bauer ruled that the People had met their burden in establishing that the pursuit and stop of Killings' vehicle, Hernandez's arrest, and the search incident to his lawful arrest were legal and admissible at trial. ¶ 71.

Judge Bauer specifically ruled, with respect to the recovery of the drugs from Hernandez in this case, that:

> The Court is of the opinion that based upon the officers' observations, coupled with reliable information from the customer in conjunction with the defendant's statements that he has cocaine on his person and that he "cracked it" [sic] provided probable cause to arrest and conduct a search incident to such lawful arrest. Where a defendant's arrest is supported by probable cause, evidence discovered during the search of his person incident to that arrest is clearly admissible (see, People v. Rendon, 273 A.D.2d 616). The fact that police asked and the defendant agreed to retrieve the drugs from his buttocks is of no moment and does not invalidate the basis upon which the defendant was searched.

Id. ¶ 72.

Moreover, Judge Bauer deemed the show-up identification procedure and Hess's identification of Hernandez to be valid and admissible at trial. ¶ 73. Judge Bauer further concluded that Det. Braun's questioning at the scene was not in need of a Miranda warning because, given the facts, the questions posed by Det. Braun were investigatory and not accusatory in nature. This was in contrast to the questions by Det. Henderson at the PSB, when Hernandez was in custody and Miranda warnings were required. ¶ 74. Accordingly, Judge Bauer denied in large part Hernandez's motion to suppress. ¶ 75.

### F. **Hernandez's Trial and Conviction**

Hernandez waived his right to a jury trial. He had a three day bench trial from August 21 through August 23, 2017 before Judge John J. Brunetti, A.S.C.J. ("Judge Brunetti"). ¶ 76. All of the officer defendants in this case, except for Sgt. Llukaci, testified at that trial, along with Hess, Hernandez, and others. ¶ 77.

Following the bench trial, plaintiff was convicted of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39) and Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16). ¶¶ 78, 80. The charges of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03) and Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16) were dismissed as lesser included and redundant offenses. ¶ 79. Defendants however have failed to mention that Hernandez was acquitted of Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y. Penal Law § 220.09).

Hernandez was sentenced on September 15, 2017 to eight years with three years post-release supervision on each count to run concurrent with each other and consecutive to parole. ¶ 81. He filed a Notice of Appeal relative to his conviction on September 15, 2017. ¶ 82. According to defendants, Hernandez's appeal was not and has not been perfected by the filing of any brief. ¶ 83.

## III. **LEGAL STANDARDS**

### A. **Rule 12(c)**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment on the pleadings." Granting such a motion "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the

contents of the pleadings." <u>Sellers v. M.C. Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).

"The standard for addressing a Rule 12(c) motion . . . is the same as that for a Rule 12(b)(6)

motion to dismiss for failure to state a claim." <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518,

521 (2d Cir. 2006). Thus, a complaint should be dismissed if it fails to "contain sufficient

factual matter . . . to 'state a claim that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S.

662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

On the other hand, if the factual allegations "raise a right to relief above the

speculative level," the complaint should not be dismissed. <u>Twombly</u>, 550 U.S. at 544. In a

12(c) motion, however, the court may consider "the complaint, the answer, [and] any written

documents attached to them." <u>L-7 Designs, Inc. v. Old Navy</u>, LLC, 647 F.3d 419, 422 (2d

Cir. 2011). "The granting of a motion for judgment on the pleadings is appropriate only if,

with all reasonable inferences drawn in favor of the non-moving party, the non-moving party

has failed to allege facts that would give rise to a plausible claim or defense." <u>Prowley v.

Hemar Ins. Corp. of Am.</u>, No. 05-CV-981, 2010 WL 1848222, at *3 (S.D.N.Y. May 7, 2010).

**B. Rule 56**

The entry of summary judgment is warranted when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (citing FED.

R. CIV. P. 56(c)); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit

under the governing law." <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>Jeffreys v. City of N.Y.</u>, 426

F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. <u>Anderson</u>, 477 U.S. at 250 n.4. The failure to meet this burden warrants denial of the motion. <u>Id</u>. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. <u>Id</u>. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. <u>Jeffreys</u>, 426 F.3d at 553. Accordingly, summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002); <u>see also</u> <u>Anderson</u>, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## IV. **DISCUSSION**

Plaintiff contends the defendant officers violated his civil rights by unlawfully arresting and searching him, including conducting a body cavity search, questioning him without informing him of his constitutional rights, and offering false statements and fabricated evidence in connection with the criminal prosecution against him.

He seeks relief under section 1983, which provides a cause of action against a state actor who has effected "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Hernandez asserts claims under § 1983 for:

(1) illegal search and seizure, (2) violation of his <u>Miranda</u> rights and right to counsel, (3) false arrest, (4) malicious prosecution, and (5) deprivation of his right to a fair trial.

## A. <u>Illegal Search and Seizure</u>

Hernandez alleges defendants unlawfully searched and seized him in the Burger King parking lot and at the PSB in violation of his Fourth Amendment rights. This includes an alleged "body cavity search" at the PSB. Defendants argue this claim must be dismissed because plaintiff is collaterally estopped from relitigating the search and seizure based on the state court suppression hearing. Moreover, defendants deny that any officer performed a body cavity search of plaintiff; instead, he volunteered to remove the crack cocaine himself.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

In so much as this claim arises from an illegal seizure of plaintiff, that claim is properly asserted within plaintiff's false arrest claim and is discussed below. <u>See, e.g.</u>, <u>Ivery v. Baldauf</u>, 284 F. Supp. 3d 426, 434 (W.D.N.Y. 2018) ("Based on the facts alleged, the false-arrest and illegal-seizure claims are properly asserted in a single count, inasmuch as they both arise from the same rights guaranteed by the Fourth Amendment.").

With regard to any illegal search of plaintiff, including an alleged body cavity search at the PSB, he is precluded from arguing that issue now because the exact issues were decided in state court. "The doctrine of collateral estoppel, or issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and

decided." Sahni v. Legal Servs. of the Hudson Valley, No. 14-CV-1616, 2015 WL 4879160, at *3 (S.D.N.Y. Aug. 13, 2015). "[I]nferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." Vargas v. City of N.Y., 377 F.3d 200, 205 (2d Cir. 2004).

Under federal law, collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Austin v. Downs, Rachlin & Martin, 270 F. App'x 52, 53–54 (2d Cir. 2008) (summary order). Similarly, under New York law, federal courts must give preclusive effect to state court judgments "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in an earlier action." LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002).

Hernandez had a full and fair opportunity to litigate whether his Fourth Amendment rights were violated at the state court suppression hearing. Judge Bauer concluded that Hernandez had volunteered the crack cocaine to the defendant officers, and that the search incident to his lawful arrest was legal and admissible. Plaintiff was subsequently convicted and does not now argue that his convictions have been overturned.

Accordingly, plaintiff's illegal search and seizure claim will be dismissed.

## B. **Fifth and Sixth Amendment Rights**

Hernandez claims defendants questioned him without informing him of his constitutional rights.  Defendants argue this claim must be dismissed because plaintiff has no remedy for any alleged <u>Miranda</u> violation and he did in fact have counsel.

First, no cause of action exists under 42 U.S.C. § 1983 for <u>Miranda</u> violations.  <u>See, e.g.</u>, <u>Chavez v. Martinez</u>, 538 U.S. 760, 767 (2003).  Instead, the remedy for a failure to provide appropriate <u>Miranda</u> warnings is a suppression of the evidence that resulted from the violation.  <u>Deshawn E. v. Safir</u>, 156 F.3d 340, 346 (2d Cir. 1998).  Accordingly, plaintiff cannot state a claim pursuant to § 1983 for any alleged failure to receive <u>Miranda</u> warnings.

Second, any claim that Hernandez was deprived of his Sixth Amendment right to counsel is also without merit.  "The Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'"  <u>McZorn v. Endicott Police Dep't</u>, No. 3:06-CV-33, 2008 WL 163581, at *8 (N.D.N.Y. 2008) (McAvoy, S.J.) (quoting <u>Texas v. Cobb</u>, 532 U.S. 162, 167 (2001)).  "A defendant's Sixth Amendment right to counsel attaches 'only at or after the time that adversary judicial proceedings have been initiated against him.'"  <u>McZorn</u>, 2008 (quoting <u>Kirby v. Illinois</u>, 406 U.S. 682, 688 (1972)).  Under New York law, "a criminal proceeding, and the right to counsel, is initiated or commenced by the filing of an accusatory instrument."  <u>Brown v. Martin</u>, No. 98-CV-64, 2004 WL 1774328, at *5 (W.D.N.Y. Aug.6, 2004) (citing <u>People v. Blake</u>, 35 N.Y.2d 331, 339 (1974); <u>see also</u> <u>Deshawn E.</u>, 156 F.3d at 349.

Hernandez fails to plead that he was without counsel at the time criminal proceedings had been initiated.  Instead, the undisputed facts establish that at the time Off. Cinque and

Det. Braun questioned plaintiff both in the Burger King parking lot and at the PSB, plaintiff had not yet been charged and thus did not have a Sixth Amendment right to counsel at that time.  He was charged after his transport from the PSB.  Moreover, it is undisputed that Hernandez was represented by court appointed counsel throughout the duration of his state court criminal proceedings.

Therefore, any claim that plaintiff was denied his Fifth or Sixth Amendment rights will be dismissed.

### C. <u>False Arrest</u>

Hernandez contends his warrantless April 27, 2016 roadside arrest was unlawful. Defendants argue plaintiff's false arrest claim should be dismissed as a matter of law because he was arrested with probable cause and convicted.

Claims for "false arrest" and "false imprisonment" are "synonymous" under New York law, and both are "substantially the same" as a § 1983 claim for false arrest.  <u>Jackson v. City of N.Y.</u>, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013).  "Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  <u>Ackerson v. City of White Plains</u>, 702 F.3d 15, 19 (2d Cir. 2012).  Probable cause is a complete defense to claims for false arrest, and "a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause."  <u>Cameron v. Fogarty</u>, 806 F.2d 380, 387 (2d Cir. 1986).

Hernandez was initially charged under New York Penal Law with five drug sale and possession charges and a sixth charge was later added.  He was ultimately convicted, following a bench trial, of Criminal Sale of a Controlled Substance in the Third Degree (N.Y.

Penal Law § 220.39(1)) and Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1)).  He was acquitted on one of the charges and the remaining charges were dismissed as lesser included offenses.  Because plaintiff was convicted of the offenses for which he was arrested, his convictions are "conclusive evidence of the good faith and reasonableness of the officers' belief in the lawfulness of the arrest." Cameron, 806 F.2d at 388.

With respect to the count for which Hernandez was acquitted, Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y. Penal Law § 220.09), there was without a question probable cause to arrest him for this crime.  Under section 220.09-01, "[a] person is guilty of criminal possession of a controlled substance in the fourth degree when he knowingly and unlawfully possesses:  1. one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more."

Defendants had probable cause to arrest Hernandez for this crime based on Hess's admission and the show-up identification of Hernandez.  An "eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitness under the circumstances." Candelario v. City of N.Y., No. 12 Civ. 1206, 2013 WL 1339102, at *5 (S.D.N.Y. Apr. 3, 2013), aff'd, 539 F. App'x 17 (2d Cir. 2013) (summary order).  This includes show-up procedures for identifying the plaintiff by the putative victim or eyewitness.  See Hargroves v. City of N.Y., 411 F. App'x 378, 383 (2d Cir. 2011) (summary order).  The state court found Hess's identification valid and admissible.  Plaintiff's false arrest claim fails on the basis of his convictions and the existence of probable cause for the charge he was acquitted of.

Accordingly, Hernandez's claim for false arrest will be dismissed.

### D. **Malicious Prosecution**

Hernandez contends he was maliciously prosecuted by defendants, who offered false statements and fabricated evidence in connection with the criminal prosecution against him in state court. Defendants argue plaintiff's malicious prosecution claim should be dismissed because he was indicted and convicted without any evidence of malice.

"Claims of malicious prosecution arising under Section 1983 are governed by the same standard applied under state law." Frederique v. Cty. of Nassau, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) (citing Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995)). To prevail on a claim of malicious prosecution, a plaintiff must establish: (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice. Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003).

It is undisputed Hernandez was convicted of two drug charges at the conclusion of a three day bench trial in state court. The remaining, lesser included and redundant offenses were dismissed. Therefore he cannot establish that the prosecution terminated in his favor on those charges.

Even if plaintiff attempted to base his malicious prosecution claim solely on the one charge he was acquitted of, he has failed to establish malice. To survive summary judgment, a plaintiff must elicit evidence "showing . . . some deliberate act punctuated with awareness of conscious falsity to establish malice." Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (internal quotations omitted). Hernandez's conclusory allegations of malice are not supported by facts in the record; he fails to put forth any evidence that any

of the officer defendants acted with malice in conveying the information known to them to the prosecutor or in signing any of the charging documents.

For these reasons, Hernandez's claim for malicious prosecution will be dismissed.

**E. Right to a Fair Trial**

Hernandez offers the same bare allegations with respect to his right to a fair trial claim as he does on his malicious prosecution claim: that defendants offered false statements and fabricated evidence in connection with the criminal prosecution against him.

"The claim of denial of the right to a fair trial due to fabricated evidence stems from the Sixth Amendment and the Due Process clauses of the Fifth, Sixth, [and] Fourteenth Amendments of the U.S. Constitution." Ying Li v. City of N.Y., 246 F. Supp. 3d 578, 627 (E.D.N.Y. 2017) (citing Holbrook v. Flynn, 475 U.S. 560 (1986); see also Jeanty v. City of Utica, No.16-CV-0966, 2017 WL 6408878, at *3 (N.D.N.Y. Aug. 18, 2017) (Sannes, J.) (finding that denial of the right to a fair trial through the creation of fabricated evidence forwarded to the prosecutor is properly a claim for denial of procedural due process). "Fabrication of evidence constitutes a violation of the right to a fair trial." Thomas v. City of Troy, 293 F. Supp. 3d 282, 295 (N.D.N.Y. 2018) (Suddaby, C.J.). "[T]here is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty." Zahrey v. Coffey, 221 F.3d 342, 344 (2d Cir. 2000).

"To state a claim of fabrication of evidence, a plaintiff must allege that 'an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation

of life, liberty, or property as a result.'" <u>Ying</u> Li, 246 F. Supp. 3d at 628 (quoting <u>Garnett v. Undercover Officer C0039</u>, 838 F.3d 265, 280 (2d Cir. 2016)).

As with his malicious prosecution claim, Hernandez has provided unspecified and unsubstantiated allegations of fabricated evidence and false statements along with conclusory allegations. He has failed to rebut defendants' showing, through affidavits or otherwise, that there is a material issue of fact for trial.

Accordingly, plaintiff's right to a fair trial claim will be dismissed.

### F. <u>Remaining Federal Issues</u>

To the extent Hernandez attempts to plead a retaliation claim, he has failed to plead or allege facts that he was retaliated against. With respect to any possible conspiracy claim, he has failed to allege a class-based motive for any alleged conspiracy. Nor can plaintiff maintain a claim for municipal liability against the City of Syracuse pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694–95 (1978), as all claims against the individual officers will be dismissed. Finally, there is no need to consider whether the defendant officers are entitled to qualified immunity because they are entitled to judgment as a matter of law on the merits of Hernandez's § 1983 claims.

### G. <u>State Law Claims</u>

In his Complaint, Hernandez alleges state law claims including intentional infliction of emotional distress, false imprisonment, negligent hiring and supervision, violations of the New York State Constitution, and violations of "New York State Tort Law." Defendants argue plaintiff's state law claims should be dismissed for non-compliance with New York General Municipal Law section 50 and the Charter of the City of Syracuse.

Under New York law, a notice of claim is a condition precedent to file a tort claim against a public corporation, N.Y. Gen Mun. § 50–e, and against police officers acting within the scope of their employment. <u>Faccio v. Eggleston</u>, No. 1:10-CV-783, 2011 WL 3666588, at *15 (N.D.N.Y. 2011) (citing N.Y. Gen. Mun. § 50–j; <u>LaGrange v. Ryan</u>, 142 F. Supp. 2d 287, 295 (N.D.N.Y. 2001)). Plaintiff concedes he did not file a notice of claim as required by law nor comply with the applicable provisions of Charter of the City of Syracuse.

Accordingly, any and all state law claims will be dismissed.

## V. <u>CONCLUSION</u>

The officer defendants have sustained their initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of plaintiff's claims. In return, plaintiff has failed to show, through affidavits or otherwise, that there is a material issue of fact for trial. Even resolving any ambiguities and drawing all inferences from the facts in a light most favorable to Hernandez, a full review of the record reveals insufficient evidence for a rational trier of fact to find in his favor. Accordingly, defendants' motion for summary judgment will be granted and plaintiff's Complaint will be dismissed in its entirety.

Therefore, it is

ORDERED that

1. Defendants L. Llukaci, E. Braun, J. Cinque, and Scott Henderson's motion for summary judgment and/or judgment on the pleadings pursuant to Federal Rules of Civil Procedure 56 and 12(c) is GRANTED; and

2. Plaintiff's Complaint is DISMISSED in its entirety.

The Clerk is directed to file a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  March 29, 2019
       Utica, New York.